Marek Kaplo
43 Dawn Drive
Clark, NJ 07066
(732) 259-0176

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAREK KAPLO,<br><br>          Plaintiff,<br><br>vs.<br><br>TOWN OF WESTFIELD; WESTFIELD POLICE DEPARTMENT; JOHN DOE(S) 1-10; and ABC ENTITIES 1-10.<br><br>          Defendants. | CIVIL ACTION NO.:<br><br><br>**COMPLAINT** |

Plaintiff, MAREK KAPLO, a resident of 43 Dawn Drive, Clark, Union County, NewJersey, by way of complaint against defendants, upon information and belief, hereby says:

## PRELIMINARY STATEMENT

1.     This action is brought to redress intentional and wanton violations of the rights of Plaintiff Marek Kaplo ("Kaplo") guaranteed by the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the New Jersey Constitution by the Town of Westfield ("Westfield") and the Westfield Police Department ("WPD") when it effected an unreasonable and unconstitutional stop and seizure of Plaintiff, followed by the issuance of a ticket to Plaintiff.

2.     Kaplo was wrongfully stopped and seized as a direct and proximate result of the improper conduct of the Defendants and/or their affiliates, associates, and/or agents.

1

## PARTIES

3.      At all relevant times, Kaplo was a resident of the Township of Clark, County of Union, State of New Jersey.

4.      At all relevant times, Defendant Westfield was and is a duly formed municipal subdivision of the State, authorized and operating under the laws of the State of New Jersey.

5.      At all relevant times, Defendant WPD was and is a duly formed police department authorized and operating under the Town of Westfield and laws of the State of New Jersey with an address at 425 E. Broad Street in Westfield, New Jersey 07090.

6.      At all relevant times, Westfield and the WPD were responsible for enacting and enforcing policies, procedures and protocols and for the training, oversight and supervision of the WPD's officers.

7.      At all relevant times, Defendants John/Jane Does 1 through 10 are gender-neutral, fictitious individuals meant to represent affiliates, associates, and/or agents of Westfield and the WPD who have been involved in the conduct that gives rise to this Complaint, but are unknown to Plaintiff at the present time. These defendants also violated Plaintiffs rights and/or were a proximate cause or substantial factor of Plaintiff's damages and were acting under color of law. They are thus sued in their individual and official capacities, as well as their capacity as principals, accomplices and/or co-conspirators. As these defendants are identified, Plaintiff shall amend the Complaint to include their known identities where appropriate.

8.      At all relevant times, defendants ABC Entities 1 through 10 being fictitious

2

designations for one or more departments, agencies or divisions of Westfield and the WPD, and/or private entities who have been involved in the conduct that gives rise to this Complaint, but are unknown to Plaintiff at the present time. These defendants also violated Plaintiffs rights and/or were a proximate cause or substantial factor of Plaintiffs damages and were acting under color of law. As these defendants are identified, Plaintiff shall amend the Complaint to include their known identities where appropriate.

9.      At all relevant times, Defendants were acting under color of law, pursuant to statutes, constitution, ordinances, regulations, policies and customs of the State of New Jersey.

## JURISDICTION

10.     This Court has jurisdiction pursuant to Title 28 of the United States Code, Section 1331, and Title 42 of the United States Code, Sections 1983.

11.     The acts and practices constituting the alleged violations have all occurred within the State of New Jersey, which is properly within the jurisdiction of the United States District Court in and for the District of New Jersey.

12.     Venue in the District of New Jersey, Newark Division, is proper because the incident which is the subject of this lawsuit occurred in the State of New Jersey and Defendants are located in this venue pursuant to 28 U.S.C. § 1391(b)(l) and§ 1391(b)(2).

13.     This Court has supplemental jurisdiction over Plaintiffs State law claims pursuant to 28 U.S.C. §1367.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

3

14.     On January 13, 2019, Samuel Fourre ("Fourre"), a Police Officer employed by the WPD was operating a marked police patrol vehicle and working in full-uniform.

15.     Kaplo, a man with no criminal history, was driving his 2006 Acura RSX type-S in Westfield in the area of South Avenue, Central Avenue and Cacciola Place, and in Garwood in the area of South Avenue on January 13, 2019, at approximately 12:30 a.m. EST.

16.     While Kaplo was travelling from Scotch Plains on South Avenue, he made a right turn onto Central Avenue.

17.     Kaplo then proceeded straight – southward on Central Ave, traveled ~850ft (0.16 mile) and then stopped at the red traffic light. After the signal changed to green, Kaplo turned left onto Cacciola Place.

18.     Approximately 25 seconds after Kaplo turned onto Cacciola Place, an unidentified vehicle made a right turn onto Cacciola Place.

19.     Approximately 9 seconds later, this vehicle turned into a private driveway on Cacciola Place.

20.     Approximately 5 seconds later, Fourre made a right turn onto Cacciola Place.

21.     At the same time as Fourre turned onto Cacciola Place, Kaplo started to turn right onto South Avenue, after reaching the end of the road on Cacciola Place where he made the full stop.

22.     Approximately 18 seconds later, Fourre made the right turn onto South Avenue.

23.     Fourre followed Kaplo on South Avenue for approximately 37 seconds before turning on his emergency lights.

24.     Kaplo pulled over and at the point was detained by Fourre at approximately 12:38

4

a.m.

25.    Fourre told Kaplo he was driving 52 mph north on Central Avenue where the speed limit is 25 mph, and when Kaplo passed Fourre then Kaplo allegedly reduced his speed.

26.    Kaplo advised Fourre that he was not driving north on Central Avenue, and could prove he was not because Kaplo had front and rear dashcams in his car.

27.    Kaplo's front and rear dashcams prove that Kaplo was never traveling north on Central Avenue and, thus, the so-called offender that Fourre claims he was stopping after observing said offender traveling north on Central Avenue was not, is not, and never was Kaplo.

28.    Fourre clearly and distinctly acknowledged the dashcams in .Kaplo's vehicle, refused to review the exculpatory dashcams videos and returned to his patrol car.

29.    In addition, Kaplo's vehicle has modified brake lights such that the light pattern of the combination of rear driving lights and brake lights make Kaplo's vehicle extremely unique, if not one of the kind, in terms of the light pattern that the aforementioned lights produce. At night, this is the most distinctly identifying feature of the vehicle, especially at a distance of more than a few car lengths.

30.    Two other WPD officers were on the scene, Ptl. Shaughnessy and Ptl. Jaramillo, and neither ensured that Fourre lawfully conducted the stop and seizure of Kaplo.

31.    Fourre returned to Kaplo's vehicle and issued him Ticket/Summons No. E19 000598 2020 (the "Ticket") for violating *NJS.A.* 38:4-98.[1]

32.    Pursuant to N.J.S.A. 39:4-104, the sanction for a conviction under N.J.S.A. 39:4-98 is a fine ranging from $50.00 to $200.00, imprisonment for a term not exceeding fifteen (15) days, or both.

33.    Pursuant to *N.J.S.A.* 39:5-30[2], Kaplo would have also been susceptible to a suspension of his driving privileges.

34.    Two hours later, on Sunday, January 13, 2019, Kaplo went to the WPD and offered to provide the dashcams videos to the Sergeant on duty, Marcin Kapka ("Kapka"), in an attempt to prove that he was wrongfully issued the Ticket.

35.    Kapka was Fourre's direct supervisor and thus a proper person to accept the Internal Affairs complaint according to the New Jersey Attorney General's ("NJAG's") *Internal Affairs Policy & Procedures*

36.    Kapka also refused to review Kaplo's dashcams videos and instead told Kaplo he would have to pay to see the video from Officer Fourre's police vehicle.

37.    Several weeks later, on or around February 23, 2019, Kaplo went to the WPD to submit a more-complete and written Internal Affairs complaint that included a detailed analysis of the events, buttressed by pictures proving that Fourre ticketed the wrong car

---

[1] N.J.S.A. 39:4-98 provides that "it shall be prima facie lawful for the driver of a vehicle to drive it at a speed not exceeding the following:

> a. Twenty-five miles per hour, when passing through a school zone during recess, when the presence of children is clearly visible from the roadway, or while children are going to or leaving school, during opening or closing hours;
>
> b. (1) Twenty-five miles per hour in any business or residential district; (2) Thirty-five miles per hour in any suburban business or residential district;
>
> c. Fifty miles per hour in all other locations, except as otherwise provided in the "Sixty-Five MPH Speed Limit Implementation Act," pursuant to section 2 of P.L.1997, c.415 (C.39:4-98.3 et al.).

[2] *N.J.S.A.* 39:5-30 states that a license may be suspended or revoked "for a violation of any of the provisions of this Title or on any other reasonable grounds, after due notice in writing of such proposed suspension, revocation, disqualification or prohibition and the ground thereof."

38.   Internal Affairs complaint was against Fourre for the unlawful traffic stop, seizure and issuance of the Ticket that violated his rights guaranteed by the Fourth Amendment to the United States Constitution and Article 1, Section 7 to the New Jersey Constitution.

39.   Kaplo was met by Kapka, who accepted the Internal Affairs complaint and told Kaplo that the complaint will be processed in a reasonable amount of time.

40.   Upon information and belief, Kapka was promoted to Sergeant despite being a defendant and main participant in a major civil rights matter out of this very District that resultedin a more than $1.1 million dollar settlement.

41.   In *Sorrentino & Rolnick v. Town of Westfield et al.*, Civil Action No. 2:11-cv-7412SRC/MAS, Kapka and other members of the WPD were accused of various civil rights violations, including causing serious injuries to a defenseless, middle aged woman, when the WPD illegally and unconstitutionally knocked down her front door and violently invaded her home, in violation of the United States and New Jersey Constitutions.

42.   This settlement occurred only after the Clark Municipal Judge threw out most of the charges that were unlawfully filed against the defendant and held that the conduct of WPD officers, including Kapka, was unlawful. Specifically, the Judge stated that the conduct by the WPD officers, including Kapka, "was unlawful and violated the Fourth Amendment of the Constitution." Id.

43.   Despite being directly responsible for violating the United States and New Jersey Constitutions and causing the Westfield residents more than $1.1 million in taxpayer funds, Westfield promoted Kapka to the rank of Sergeant, thereby placing him in a training and supervisory capacity over younger, inexperienced officers, like Fourre.

44.     Kaplo was told via letter that the Internal Affairs investigation would commence after the Ticket is adjudicated at the municipal court level, which eventually lasted 10 months and took 7 different in-person court appearances.

45.     WPD's Rules and Regulations/Policies and Procedures as to Internal Affairs, contained in Volume 1, Chapter 9, Point II states that internal affairs complaints received from citizens regarding "employee misconduct or inappropriate behavior … are subject to proper receipt, investigation and resolution in accordance with that policy and procedure set forth by theAttorney General of the State of New Jersey related to 'Internal Affairs.'"

46.     WPD's Rules and Regulations/Policies and Procedures as to Internal Affairs, contained in Volume I, Chapter 9, Point III.A.I.a states that the "goal of intemal affairs is to ensure the integrity of the department is maintained through a system of internal discipline where fairness and justice are assured by objective, impartial investigation and review."

47.     The NJAG's Internal Affairs Policy & Procedures under section Internal Affairs Investigation Procedures states that complaints "must be professionally, objectively and **expeditiously** investigated in order to gather all information necessary to arrive at a proper disposition."

48.     Refusing to conduct an immediate investigation into Kaplo's internal affairs complaint against Fourre violated the WPD's policy and the NJAG's policy that internal affairs complaints be professionally, objectively and **expeditiously** investigated and reviewed.

49.     On the day that Kaplo received a Ticket, January 13, 2019, Fourre was issued a police vehicle equipped with mobile digital video recording systems.

50.     WPD's policy regarding use of mobile digital video recording systems by officers contained in WPD's Rules and Regulations/Policies and Procedures Volume IX chapter 24 states

8

that one of the objectives of the policy is to "accurately document events" and also that "officers shall utilize mobile digital video recording systems whenever possible during the performance of law enforcement activities."

51.     According to the aforementioned policy, the initiation of the recording can be manually activated at any time by the officer by pressing "the red RECORD button on the remote control panel", and all recording have 30 seconds of prerecorded data.

52.     Recordings from Fourre's police vehicle, that was provided to Kaplo as a part of the municipal discovery, do not show the speeding violation that Fourre said he observer Kaplo committing. Neither is there any recording of Fourre driving his patrol vehicle on either Central Avenue or Cacciola Place.

53.     On the day of January 13, 2019, Fourre did not adhere to the WPD policy on the use of mobile digital video recording systems by police officers, and failed to record the violation itself and its immediate events.

54.     On February 28, 2019, Kaplo appeared in Westfield Municipal Court regarding the Ticket.

55.     On March 19, 2019, Kaplo again appeared in Westfield Municipal Court regarding the Ticket.

56.     As of April 9, 2019, Westfield and the WPD knew that Officer Fourre had credibility issues.

57.     On May 7, 2019, Kaplo appeared in Westfield Municipal Court and attempted to present to the prosecutor Yvette Gibbons the videos from Kaplo's car dashcams along with his narrative. Prosecutor showed little interest in seeing those videos and instead proceeded with her prosecution of Fourre's complaint. The municipal court adjourned the

matter and marked the case "try or dismiss"

58.    On the same day May 7, 2019, Kaplo's went to see the head of IA department Jason Carter at WPD station and again was told that his IA complaint will not be investigated until the Fourre's complaint is fully resolved.

59.    On the same day May 7, 2019, Kaplo emailed Westfield Mayor Shelley Brindle and attached the exculpatory dashcams videos.

60.    Kaplo's email to Westfield Mayor Brindle further indicated that he showed the exculpatory dashcams videos to Westfield Municipal Prosecutor Yvette Gibbons, "yet [Gibbons] still want[ed] to prosecute [him], and is very rude and aggressive towards [him.]"

61.    Kaplo's email asked Westfield Mayor Brindle if he had any "recourse ... besides spending boatload of money on an attorney."

62.    Westfield Mayor Brindle did not reply to Kaplo's email.

63.    At this point Kaplo, realizing that all of his efforts to resolve the Ticket are futile, retained trial attorney Joshua McMahon from Schiller McMahon, LLC to represent Kaplo in trial.

64.    On June 20, 2019, Kaplo appeared in Westfield Municipal Court regarding the Ticket, and by way of his defense trial attorney, demanded a probable cause hearing and, in the alternative, a Speedy Trial and immediate dismissal if the State refused to proceed with its prosecution of the Ticket.

65.    Westfield Municipal Judge denied all of the aforementioned motions, ignored his own 'try or dismiss' mark from May 7th hearing, and denied a request for a future "try or dismiss" date.

10

66.     By email dated July 17, 2019, John Esmerado, Special Deputy Attorney General/Acting Assistant Prosecutor with the Union County Prosecutor's Office admitted that Kaplo was "substantially down Cacciola Place ... by the time the car likely assigned to Officer Foure [sic] pulls onto Cacciola Place."

67.     Esmerado further ceded that "the majority of Mr. Kaplo's time driving is spent on South Avenue and not Central Avenue."

68.     Despite these significant and exculpatory findings, Esmerado refused to dismiss the Ticket.

69.     On July 18, 2019, Kaplo appeared in Westfield Municipal Court regarding the Ticket during which the matter was adjourned due to a conflict of interest claimed by municipal prosecutor Yvette Gibbons.

70.     Officer Jason Rodger assigned to investigate Kaplo's Internal Affairs complaint against Fourre, was present at this and all of the subsequent hearings. Jason Rodger remained silent throughout these hearings and allowed the prosecution to continue. At no point did he offer to put anything on the record.

71.     As of July 19, 2019, Westfield and the WPD knew that Officer Fourre had credibility issues.

72.     During a suppression hearing before the Honorable Lara K. DiFabrizio, Union County J.S.C. on July 19, 2019, Fourre testimony was:

> inconsistent with his prior reports, which omitted important relevant information. Specifically Ofc. Fourre failed to mention anywhere in his reports that defendant consented to a search of her bag to find her medication. Moreover, this "consent" statement by defendant was not revealed until the day of the hearing, nearly 6 months after defendant filed the motion to suppress. On cross-examination, Ofc. Fourre reportedly failed to recall key details of the search, which further negated

his veracity.

73.     As a result of Fourre's testimony, the defense's motion to suppress was granted.

74.     Judge DiFabrizio entered an Order to this effect on or about July 19, 2019

75.     On July 19, 2019, over six months after the Ticket was unlawfully and unconstitutionally issued, WPD Chief Christopher Battiloro directed Fourre, now known to the WPD to have credibility issues, to review together with municipal prosecutor Yvette Gibbons videos from Kaplo's dashcams and authorized the WPD to dismiss the Ticketif it created reasonable doubt as to whether the alleged traffic violation occurred.

76.     It was not revealed to Kaplo what transpired, if anything, regarding Fourre and Prosecutor Yvette Gibbons reviewing Kaplo's dashcams videos together.

77.     On August 29, 2019, Kaplo appeared in Westfield Municipal Court regarding the Ticket. Matter was adjourned on judge's accord to transfer the case out of Westfield. Case transfer never materialized.

78.     On October 10, 2019, Kaplo appeared in Westfield Municipal Court regarding the Ticket. Matter was adjourned as the judge acting on the request from the special prosecutor, ignored the court rule that the trials be held at the end of the session.

79.     By letter dated October 22, 2019, over ten months after the Ticket was unlawfully and unconstitutionally issued, Acting First Assistant Prosecutor Dorren A. Yanik, who took overthe prosecution of Kaplo's Ticket from Westfield's prosecutor Yvette Gibbons, dismissed the Ticket stating that following her review, "it is the State's position that the prosecution cannot sustain its burden of proof."

80.     On 29, 2019, over ten months after the Ticket was unlawfully and

unconstitutionally issued, Westfield Municipal Court dismissed the Ticket.

81.    By letter dated January 8, 2020, just under 12 months after the Ticket was unlawfully and unconstitutionally issued, the WPD "fully agreed" that the "dismissal of the complaint against [Kaplo] for the asserted traffic offense was substantially prolonged." WPD also stated that "[t]he investigation failed to disclose any information which substantiates [Kaplo's] complaint."

82.    By letter dated May 11, 2020, over 15 months after the Ticket was unlawfully andunconstitutionally issued, Kaplo was notified by David Hummel, Special Deputy Attorney General/Acting Assistant Prosecutor the Union County Prosecutor's Office that the internal affairs complaint he filed against Fourre was "unfounded."

83.    It was the practice, policy and custom of the WPD to delay investigations into internal affairs complaints, in violation of its own internal policies as well as the policies of the NJAG.

84.    Both WPD's IA and Union County Prosecutor's Office, in their investigation of Kaplo's complaint, failed to recognize that Fourre, during the course of his investigation on January 13, 2019, deliberately, willfully and completely ignored to investigate exculpatory evidence in the form of videos from Kaplo's vehicle, despite clearly acknowledging it at the scene.

85.    WPD's IA and Union County Prosecutor's Office conclusions of their respective investigations, suggest that the ignorance of the evidence by patrolmen and their supervisors during a course of their own investigations is a common occurrence and acceptable conduct in the town of Westfield and county of Union.

13

86.    Shortly after becoming the chief of the WPD, Christopher Battiloro was quoted in article authored by Corinne Flaherty and published on January 22, 2019 by "Hi's Eye", an institution affiliated with Westfield High School. The article quotes Christopher Battiloro as saying: "…our police officers are out there, and they are proactively doing their job. They're stopping cars and they're creating a deterrent for people to come here and commit a crime."

87.    In an article authored by Russ Crespolini and published by Patch.com on June 19, 2019, WPD chief is quoted as saying: "I work for you – the Mayor and Council of the Town of Westfield".

88.    The actions of the Defendants resulted in unnecessary and costly legalfees incurred by Kaplo, as well as loss of income. The adjudication of the complaint took over 10 months and required 7 in-person court appearances by Kaplo.

89.    Defendants' actions were willful and wanton disregard of Kaplo's civil and constitutional rights.

## FIRST COUNT
## VIOLATIONS OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION (ILLEGAL SEIZURE)

### *ACTIONABLE PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANTS*

90.    Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

91.    The Fourth Amendment to the United States Constitution provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

14

92.    Kaplo was unreasonably and unlawfully seized in violation of the Fourth Amendment to the United States Constitution when he was stopped by Westfield Police Department Officer Fourre without reasonable suspicion.

93.    Kaplo suffered further injuries when the internal affairs complaint filed with the WPD against Fourre was not "professionally, objectively and expeditiously investigated."

94.    The foregoing acts were committed with gross, reckless and callous indifference to the constitutional civil rights of Kaplo, and pursuant to long-standing customs, policies and practices of Westfield and the WPD which violated clearly established law, rules, and regulations and are actionable under 42 U.S.C. §1983.

95.    As a direct and proximate result of the aforementioned violations of Kaplo's constitutional civil rights, he has suffered compensatory damages

WHEREFORE, plaintiff Marek Kaplo demands judgment against defendants the Town of Westfield and the Westfield Police Department, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## SECOND COUNT
## VIOLATIONS OF ARTICLE I, SECTION 7 OF THE NEW JERSEY CONSTITUTION (ILLEGAL SEIZURE)

### *ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 ET SEQ.*

96.    Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

97.    Article I, Section 7 of the New Jersey Constitution states that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause,

15

supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized."

98.     Kaplo was unlawfully seized in violation of the Article I, Section 7 of the New Jersey Constitution when he was stopped by Westfield Police Department Fourre without reasonable suspicion. Kaplo suffered further injuries when the internal affairs complaint filed with the WPD against Fourre was not "professionally, objectively and expeditiously investigated."

99.     Kaplo suffered further injuries when the internal affairs complaint filed with the WPD against Fourre was not "professionally, objectively and expeditiously investigated."

100.     The foregoing acts were committed with gross, reckless and callous indifference to the constitutional civil rights of Kaplo, and pursuant to long-standing customs, policies and practices of Westfield and the WPD. Such actions violated clearly established law, rules, and regulations and are actionable under *N.J.S.A.* 10:6-1 et. seq.

101.     As a direct and proximate result of the aforementioned violations of Kaplo's constitutional civil rights, he has suffered compensatory damages.

WHEREFORE, plaintiff Marek Kaplo demands judgment against defendants the Town of Westfield and the Westfield Police Department, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

### THIRD COUNT
### VIOLATIONS OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION
### (ILLEGAL WARRANT)

*ACTIONABLE PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANTS*

102.     Plaintiff repeats and realleges each and every allegation heretofore pled as though

fully set forth herein at length.

103.     The Fourth Amendment to the United States Constitution provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

104.     The warrant given to Kaplo was not based upon probable cause as required by theFourth Amendment to the United States Constitution.

105.     The warrant to Kaplo was issued with gross, reckless and callous indifference to the constitutional civil rights of Kaplo, and pursuant to long-standing customs, policies and practices of Westfield and the WPD which violated clearly established law, rules, and regulations and are actionable under 42 U.S.C. §1983.

106.     As a direct and proximate result of the aforementioned violations of Kaplo's constitutional civil rights, he has suffered compensatory damages.

WHEREFORE, plaintiff Marek Kaplo demands judgment against defendants the Town ofWestfield and the Westfield Police Department, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further reliefas allowable by law and as the Court deems just and appropriate.

## FOURTH COUNT
### VIOLATIONS OF ARTICLE I, SECTION 7 OF THE NEW JERSEY CONSTITUTION
### (ILLEGAL WARRANT)

### *ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 ET SEQ.*

107.     Plaintiff repeats and realleges each and every allegation heretofore pled as

17

thoughfully set forth herein at length.

108.   Article I, Section 7 of the New Jersey Constitution states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized."

109.   The warrant given to Kaplo was not based upon probable cause as required by the Fourth Amendment to the United States Constitution.

110.   The warrant to Kaplo was issued with gross, reckless and callous indifference to the constitutional civil rights of Kaplo, and pursuant to long-standing customs, policies and practices of Westfield and the WPD which violated clearly established law, rules, and regulations

and are actionable under N.J.S.A. 10:6-1 et. seq.

111.   As a direct and proximate result of the aforementioned violations of Kaplo's constitutional civil rights, he has suffered compensatory damages.

WHEREFORE, plaintiff Marek Kaplo demands judgment against defendants the Town of Westfield and the Westfield Police Department, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

Dated:  September 28, 2021

BY:  *Isl Marek Kaplo*
MAREK KAPLO

18